Law Office
# Rhett O. Millsaps II

May 25, 2016

**VIA CM/ECF**

Honorable Denis R. Hurley
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY  11722

      Re:    *Great Minds v. FedEx Office and Print Services, Inc.*,
              Civil Action No. 2:16-cv-01462-DRH-ARL

Dear Judge Hurley,

      I write on behalf of plaintiff Great Minds in response to the pre-motion letter submitted by defendant FedEx Office and Print Services, Inc. ("FedEx Office") on May 17, 2016 ("Def. Letter"). For the reasons discussed below, a motion to dismiss by FedEx Office would be futile, but Great Minds is prepared to brief the motion at the Court's direction.

      Great Minds is a 501(c)(3) non-profit, educational organization that, among other things, creates comprehensive PreK-12 curricula and instructional materials used by schools around the country. As an integral part of its non-profit mission to serve schoolchildren and classroom teachers, Great Minds has chosen to make digital files comprising the core components of its critically acclaimed *Eureka Math* curriculum (the "Materials") available to the public for free download under a "Creative Commons Attribution – Non Commercial – Share Alike 4.0 International Public License" (the "License"). The License authorizes teachers, schools, students, FedEx Office, and any other member of the public to "reproduce and Share the [*Eureka Math*] Material, in whole or in part, **for NonCommercial purposes only**…" License § 2(a)(1)(A) (emphasis added). According to a 2016 report by the Rand Corporation, the Materials are used by approximately 57% of elementary math teachers and 47% of secondary math teachers in states that have adopted Common Core standards, making Great Minds' *Eureka Math* curriculum the most widely used primary and secondary math curriculum in the nation.

      Great Minds also sells printed book versions of the Materials and uses the revenues from those sales to develop new curricula and otherwise further its educational mission. According to the terms of the License under which Great Minds makes available its free, digital version of *Eureka Math*, Great Minds retains its rights to collect royalties from commercial reproduction of the Materials. In particular, Section 2(b)(3) of the License contains an express limitation, which provides as follows:

> To the extent possible, the Licensor waives any right to collect royalties from You for the exercise of the Licensed [*i.e.*, noncommercial] Rights, whether directly or through a collecting society under any voluntary or waivable statutory or compulsory licensing scheme. **In all other cases the Licensor expressly**

>       **reserves any right to collect such royalties, including when the Licensed
>       Material is used other than for NonCommercial purposes**.

*Id*. § 2(b)(3) (emphasis added).

Under the plain language of this limitation it is clear that FedEx Office is not licensed to reproduce or distribute the Materials, though FedEx Office does not deny that it has been reproducing, and continues to reproduce, the Materials for its own profit. Instead, FedEx Office argues that its activities are permissible because it merely "assists school districts, at the school districts' request, in making copies of the Licensed Materials to enable the use of those materials by school districts under the License." Def. Letter at 2. The fatal flaw in FedEx Office's argument, however, is the fact that it wholly ignores the License's express limitation that reserves Great Minds' rights to collect royalties for any commercial use of the Materials.

FedEx Office's argument would be availing if FedEx Office were reproducing the Materials at cost at the request of school districts as a *pro bono* service for educational institutions. When FedEx Office takes possession of the Materials and reproduces them for its own profit, however, it exceeds the scope of the License by making a commercial use of the materials that directly competes with Great Minds' own sales of the Materials in printed book form. Two cases involving reproduction of course packs by commercial copy shops at the request of professors are directly on point here. *See Princeton Univ. v. Mich. Document Servs.*, 99 F.3d 1381 (6th Cir. 1996); *Basic Books v. Kinko's Graphics Corp.*, 758 F. Supp. 1522 (S.D.N.Y. 1991). The Sixth Circuit's reasoning in *Princeton University*, holding that the challenged use (*i.e.*, reproduction of course packs by a commercial shop) was commercial in nature, applies squarely to the dispute at hand:

>       It is true that the use to which the materials are put by the students who purchase
>       the coursepacks is noncommercial in nature. But the use of the materials by the
>       students is not the use that the publishers are challenging. **What the publishers
>       are challenging is the duplication of copyrighted materials for sale by a for-
>       profit corporation that has decided to maximize its profits—and give itself a
>       competitive edge over other copyshops—by declining to pay the royalties
>       requested by the holders of the copyrights**.

99 F.3d at 1386 (holding that the commercial copy center did not stand in the shoes of its customers when it made the reproductions for their noncommercial use).

The same reasoning is applicable here, where FedEx Office, a for-profit corporation, "has decided to maximize its profits—and give itself a competitive edge over other copyshops—by declining to pay the royalties requested by" Great Minds for reproduction of the Materials made by FedEx Office. *Id*. This is precisely the sort of commercial use excluded in § 2(b)(3) of the License at issue here.

The cases cited by FedEx Office – *Estate of Hevia v. Portrio Corp.*, 602 F.3d 34 (1st Cir. 2010) and *Automation by Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749 (7th Cir. 2006) –

Hon. Denis R. Hurley
May 25, 2016
Page 3 of 3

actually support Great Minds' claim here as well, to the extent they are not inapposite. *Estate of Hevia* is inapposite in that it involved an implied, non-exclusive license, the central issue of the case was who controlled the license, the license was not a public one, and, most important, there was no relevant restriction of rights made in the license (as there is here). But the First Circuit in *Estate of Hevia* made clear that a court will look carefully at and enforce the specific terms and scope of a license. In particular, the court there observed "[t]hat control was, of course, limited by the scope of the license. So viewed, the relevant question reduces to whether FV, acting for the license holder, observed those limits." 602 F.3d at 44. The court went on to hold, "When, as in this case, there is no indication that a license-granting copyright owner has restricted the licensee's ability to use third parties in implementing the license, the license is generally construed to allow such delegation." *Id*. at 44-45. In this case, of course, the matter is entirely different – the License clearly is restricted to noncommercial use only.

*Raybestos* is similarly inapposite in its facts, but, like *Estate of Hevia*, it shows the importance courts place on the actual terms of a license. In that case, the owner of the copyright in machine drawings brought an action against a licensee and its contractor for copyright infringement in connection with the transfer by the licensee of the drawings to the contractor for the purpose of building a similar machine. The court ultimately concluded that there was no copyright infringement, but it did so based on a careful analysis of the terms of the copyright license, rejecting a "leap in logic" urged by the copyright holder that would "work[] only if [the court] grant[ed] [the copyright holder's] request to interpret the contract to add such limiting language—that is if [the court] accept[ed] [the copyright holder's] contention that the contract implie[d] something that it [did] not say." 463 F.3d at 758. Unlike in *Raybestos*, the case at hand requires no "leap in logic." *Id*. The written License language here draws a clear distinction between permitted noncommercial use and unauthorized commercial use. FedEx Office – and every other person or firm in the world – is permitted to make noncommercial uses of the Materials, but specifically barred by the License from making commercial uses. FedEx Office's use is incontrovertibly commercial.

Finally, public policy considerations weigh heavily in favor of Great Minds in this case. FedEx Office's urged interpretation of the License would have a significant chilling effect on Great Minds' and others' incentive to make educational materials available for free to the public for noncommercial use. Such an interpretation would mean that Great Minds and others could not make their materials available for free noncommercial uses under the License without concomitantly giving up their right to collect royalties from commercial reproduction. This Court should reject an interpretation of the License that runs counter to its plain language and would effect such a counter-productive and perverse result.

Sincerely,

*[signature]*

Rhett O. Millsaps II

cc:     Mark D. Taylor and Nicholas O. Kennedy (via CM/ECF)