**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GREAT MINDS, | Case No. 16-cv-01462-DRH-ARL |
| Plaintiff, | ECF CASE |
| v. | |
| FEDEX OFFICE AND PRINT SERVICES, INC., | |
| Defendant. | |

**PLAINTIFF GREAT MINDS' MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Dated:  August 5, 2016
       New York, New York

LAW OFFICE OF RHETT O. MILLSAPS II
Rhett O. Millsaps II
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone:  (646) 535-1137
Facsimile:  (646) 355-2816
Email:  rhett@rhettmillsaps.com

*Attorneys for Plaintiff Great Minds*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES…………………………………………………………………...ii

PRELIMINARY STATEMENT…………..……………………………………………...1

STATEMENT OF FACTS…………………………………………………...………...2

APPLICABLE LEGAL STANDARDS……...……………………………………………...4

ARGUMENT………………………..……………………………………………...6

I.     THE COURT SHOULD DENY FEDEX'S MOTION BECAUSE FEDEX'S
       UNAUTHORIZED COMMERCIAL REPRODUCTION EXCEEDS THE SCOPE
       OF THE LICENSE ON ITS FACE …………………………………………...……………6

       A.     FedEx Does Not Stand in the Shoes of Its Customers When It Reproduces
              Great Minds' Material for Its Own Profit……………………………………………7

       B.     FedEx Is A Direct Infringer of Great Minds' Material…………………….……14

II.    GRANTING FEDEX'S MOTION WOULD CREATE BAD PUBLIC POLICY……....15

III.   THE COURT SHOULD DENY FEDEX'S REQUEST FOR ATTORNEYS' FEES…..16

CONCLUSION……………………………………………………………………..19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)…………………………………………………………………...4

*Automation by Design, Inc. v. Raybestos Prods. Co.*,
    463 F.3d 749, 757 (7th Cir. 2006)………………………...…………………………10, 11

*Basic Books v. Kinko's Graphics Corp.*,
    758 F. Supp. 1522 (S.D.N.Y. 1991)……………………...………………………….7-9

*Bourne v. Walt Disney Co.*,
    68 F.3d 621 (2d Cir. 1995)…………………………………………………………….4-6

*Canal+ Image UK Ltd. v. Lutvak*,
    792 F. Supp. 2d 675 (S.D.N.Y. 2011)…………………...…………………………...17

*Capitol Records, LLC v. ReDigi Inc.*,
    934 F. Supp. 2d 640 (S.D.N.Y. 2013)…………………………...…………………14

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
    536 F.3d 121 (2d Cir. 2008)……………………………..………………...……..14, 15

*Cohen v. U.S.*,
    98 Fed. Cl. 156 (Fed. Cl. 2011)…………………………………...…………….6, 7

*Compliance Source, Inc. v. GreenPoint Mortg. Funding, Inc.*,
    624 F.3d 252 (5th Cir. 2010)……………………………………...…………….12, 13

*Estate of Hevia v. Portrio Corp.*,
    602 F.3d 34 (1st Cir. 2010)……………………………………...……….8, 10

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994)…………………………...……………………...……17, 18

*Galli v. Metz*,
    973 F.2d 145 (2d Cir.1992)……………………………...………………….10, 16

*Hogan Sys., Inc. v. Cybresource Int'l, Inc.*,
    158 F.3d 319 (5th Cir. 1998)……………………………...……….8, 10, 12

ii

*John Wiley & Sons, Inc. v. DRK Photo*,
     998 F. Supp. 2d 262 (S.D.N.Y. 2014)……………………..…………………………..……8

*Lambertini v. Fain*,
     No. 12–CV–3964 (DRH)(ARL), 2014 WL 4659266 (E.D.N.Y. Sept. 17, 2014)…………...18

*Leutwyler v. Royal Hashemite Court of Jordan*,
     184 F. Supp. 2d 303 (S.D.N.Y. 2001)……………………………………………………5

*Levitin v. Sony Music Entertainment*,
     101 F. Supp. 3d 376 (S.D.N.Y. 2015)……………………………………………………5

*Lotus Dev. Corp. v. Borland Int'l, Inc.*,
     140 F.3d 70 (1st Cir. 1998)………..………………………………………………17

*Mahan v. Roc Nation, LLC*,
     No. 14 Civ. 5075(LGS), 2015 WL 4388885 (S.D.N.Y. July 17, 2015)…………………16, 18

*Matthew Bender & Co. v. W. Pub. Co.*,
     240 F.3d 116 (2d Cir. 2001)………………………..…………………………………16

*Mitek Holdings, Inc. v. Arce Eng'g Co.*,
     198 F.3d 840 (11th Cir. 1999)………………………...……………..……………………16, 18

*Playboy Enterprises International Inc. v. Mediatakeout.com LLC*,
     15 Civ. 7053 (PAE), 2016 WL 1023321 (S.D.N.Y. March 8, 2016)…………………………5

*Princeton Univ. Press v. Mich. Document Servs.*,
     99 F.3d 1381 (6th Cir. 1996)..………………………………………..…………………8, 9, 15

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Serv., Inc.*,
     907 F. Supp. 1361 (N.D.Ca. 1995)……………………..………………………………14

*Spinelli v. Nat'l Football League*,
     96 F. Supp. 3d 81 (S.D.N.Y. 2015)…………………………………………………………5

*Steve Altman Photography*,
     18 Cl. Ct. 267 (Cl. Ct. 1989)……………………………………………………..……6

*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*,
     996 F.2d 1366 (2d Cir. 1993) …………………………………………………..……14

*U.S. Bank Nat. Ass'n v. Ables & Hall Builders*,
     582 F. Supp. 2d 605 (S.D.N.Y. 2008)…………………………………………………4

*Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*,
   517 F.3d 104 (2d Cir. 2008)……………………………………………..……………..4

*WPIX, Inc. v. ivi, Inc.*,
   691 F.3d 275 (2d Cir. 2012)…..……………………………………..……………..4

**Rules**

Fed. R. Civ. P. 12(b)(6)…………………………………………………………….4

Fed. R. Civ. P. 15…….....................................................................................19

Plaintiff Great Minds respectfully submits this memorandum of law in opposition to defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) (the "Motion" or "Mot.").

## PRELIMINARY STATEMENT

Defendant FedEx Office and Print Services, Inc. ("FedEx") moves to dismiss Great Minds' complaint solely on the basis of the written license under which Great Minds makes certain materials available for free to the public for noncommercial purposes only. FedEx does not (and cannot, on this motion to dismiss) deny that it has been reproducing Great Minds' materials for FedEx's own profit, but instead argues that FedEx's commercial activities using Great Minds' materials are permissible under the license because FedEx's commercial activities are undertaken "to assist licensee school districts in exercising their [non-commercial use] rights under the License" and because the "terms of the License are unambiguous and reflect no intent by Great Minds to prevent delegation." Mot. at 4, 6-7. FedEx's argument, however, relies on an unsupportable reading of the license that ignores both its express limitations and case law that makes clear those limitations must be enforced. Further, the cases cited by FedEx actually support Great Minds' position. FedEx's motion should be rejected by this Court.

First, FedEx admits that the license at issue is "limited…by the restriction that the use of the Licensed Materials must be 'NonCommercial.'" Mot. at 2. FedEx simply ignores, however, the other limiting language in the license, which expressly reserves Great Minds' right to collect royalties for any and all commercial uses of the licensed materials. *See* Compl. ¶ 12, Ex. B § 2(b)(3). These express limitations in the license at issue here make the copyright-license cases cited by FedEx inapposite to its motion, as none of those cases involved licenses with similar limitations. Moreover, these limitations on the face of the license render immaterial the issue of

whether FedEx was acting as a party to the license or as a delegate of licensee schools making noncommercial use of Great Minds' materials, as the schools themselves do not have the right under the license to make commercial uses of the materials, and thus cannot delegate that right to FedEx. Simply put, when FedEx takes possession of Great Minds' materials and reproduces them for its own profit, it exceeds the scope of the license – and directly infringes Great Minds' copyrights – by making an unauthorized commercial use of the materials that directly (and unfairly) competes with Great Minds' own sales of its materials in printed book form.[1]

Additionally, a ruling by this Court in favor of FedEx would have a significant chilling effect on Great Minds' and others' activities that benefit the public. FedEx's urged interpretation would mean that Great Minds and others could not make their materials available for free noncommercial use under the Creative Commons license at issue, which contains language expressly reserving the licensor's right to collect royalties for commercial uses, without concomitantly and nonsensically giving up this expressly reserved right to collect royalties from any sort of commercial reproduction that could be characterized (or mischaracterized) as having been done as the "agent" or "delegate" of a non-commercial user. The Court should not adopt FedEx's interpretation that ignores this specific, limiting language in the license and would make bad public policy.

Because FedEx's motion to dismiss has no merit, the Court should deny FedEx's motion in its entirety, including FedEx's request for an award of attorneys' fees.

## STATEMENT OF FACTS

Great Minds is a Washington, D.C. based non-profit 501(c)(3) organization that seeks to ensure that all students, regardless of their circumstance, receive a content-rich education in the

---

[1] Because the license's limiting language is unambiguous in Great Minds' favor, Great Minds intends to move for partial summary judgment on this issue at its earliest opportunity to do so.

2

full range of the liberal arts and sciences, including English, mathematics, history, the arts, science, and foreign languages. Complaint ("Compl.") ¶ 8. Great Minds works with teachers and scholars to create instructional materials, conduct research, and promote policies that support a comprehensive and high-quality education in America's public schools. *Id*.

As a central component of its mission, Great Minds has created, *inter alia*, a comprehensive math curriculum, *Eureka Math*, for grades PreK-12 (the "Material") that is used by more than 60,000 educators around the country and so far has been adopted by the states of New York and Tennessee. Compl. ¶ 9. Great Minds owns federal copyright registrations in the Material. Compl. ¶ 10, Ex. A. Great Minds publishes and sells printed book versions of the Material and uses the revenues from those sales to develop new curricula and otherwise further its non-profit educational mission. Compl. ¶ 11. Great Minds also has entered royalty-bearing licenses with third parties that wish to engage in reproduction of the Material for their own commercial gain, and Great Minds uses those revenues to support its non-profit, educational activities. Compl. ¶ 15.

Additionally, to further its non-profit mission to serve schoolchildren and classroom teachers, Great Minds makes digital files of the Material available to the public for free download under a written "Creative Commons Attribution – Non Commercial – Share Alike 4.0 International Public License" (the "License"). Compl. ¶ 12, Ex. B. The License authorizes teachers, schools, students, FedEx, and any other member of the public to "reproduce and Share the [Eureka Math] Material, in whole or in part, **for NonCommercial purposes only**…" Compl. ¶ 12, Ex. B § 2(a)(1)(A) (emphasis added). Great Minds, however, expressly reserves its rights to collect royalties from commercial reproduction of the Material under a limitation in the License that reads as follows:

3

To the extent possible, the Licensor waives any right to collect royalties from You for the exercise of the Licensed [i.e., noncommercial] Rights, whether directly or through a collecting society under any voluntary or waivable statutory or compulsory licensing scheme. **In all other cases the Licensor expressly reserves any right to collect such royalties, including when the Licensed Material is used other than for NonCommercial purposes**.

Compl. ¶ 12, Ex. B § 2(b)(3) (emphasis added).

FedEx has ignored this express limitation in the License and has reproduced the Material for its own profit, without authorization from Great Minds, in at least New York and Michigan in 2016 and 2015, respectively. Compl. ¶¶ 16-19.

## APPLICABLE LEGAL STANDARDS

On a motion to dismiss under FRCP 12(b)(6), the Court must assume that all of the well-pleaded facts alleged in the complaint are true, construe those facts in the light most favorable to plaintiff, and draw all reasonable inferences in favor of plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008); *U.S. Bank Nat. Ass'n v. Ables & Hall Builders*, 582 F. Supp. 2d 605, 606 (S.D.N.Y. 2008). A motion to dismiss must be denied if the factual allegations support a "reasonable inference that the defendant is liable." *Iqbal*, 556 U.S. at 663.

Where a plaintiff owns valid copyrights in materials that the defendant has reproduced without authorization, as is the case here, the "burden of proof … falls on defendants to demonstrate that they have an affirmative statutory defense to copyright infringement." *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 278 (2d Cir. 2012) (citing *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995) (noting possession of license by accused infringer is affirmative defense and burden falls on licensee to prove license's existence)). Dismissal "on the basis of a license is proper when 'a contract underlying the suit <u>clearly and unambiguously</u> demonstrates the existence of the defendant's license to exploit the plaintiff's copyrights <u>and where plaintiff has</u>

4

not shown any limitation on that license.'" *Playboy Enterprises International Inc. v. Mediatakeout.com LLC*, 15 Civ. 7053 (PAE), 2016 WL 1023321, *2-3 (S.D.N.Y. March 8, 2016) (emphasis added) (citing *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 121 (S.D.N.Y. 2015)).

      Courts generally apply principles of contract law in the construction of copyright licenses. *See Bourne*, 68 F.3d at 628-29 (2d Cir. 1995); *Leutwyler v. Royal Hashemite Court of Jordan*, 184 F. Supp. 2d 303, 306 (S.D.N.Y. 2001). Where "the language of the contract is unambiguous and conveys a definite meaning, then the interpretation of the contract is a question of law for the court." *Bourne*, 68 F.3d at 629 (internal quotation marks and citation omitted). "Alternatively, where the language used is susceptible to differing interpretations, each of which may be said to be as reasonable as another, then the interpretation of the contract becomes a question of fact for the jury." *Id*. (internal quotation marks and citation omitted). *See also Levitin v. Sony Music Entertainment*, 101 F. Supp. 3d 376, 387-88 (S.D.N.Y. 2015) (denying motion to dismiss copyright claims where defendants' "reading of the [licenses was] but one possible reading of the[] agreements," and "Plaintiffs [had] suggested, and the Court [found] reasonable, alternative interpretations of the[] contracts"); *Leutwyler*, 184 F. Supp. 2d at 306-307 (denying motion to dismiss copyright claims where plaintiff argued that readings of the license at issue other than that urged by defendants were "possible, and were actually intended").

      Accordingly, while Great Minds contends that the limiting language in the License is unambiguous in its favor, Great Minds need only show that its interpretation of the License is a reasonable alternative to FedEx's interpretation in order to defeat FedEx's motion to dismiss.

## ARGUMENT

**I.    THE COURT SHOULD DENY FEDEX'S MOTION BECAUSE FEDEX'S UNAUTHORIZED COMMERCIAL REPRODUCTION EXCEEDS THE SCOPE OF THE LICENSE ON ITS FACE**

"In construing the terms of [a] license," a "court must give precedence to narrow, specific language over broad, general language." *Cohen v. U.S.*, 98 Fed. Cl. 156, 165 (Fed. Cl. 2011) (internal quotation marks omitted) (quoting *Steve Altman Photography*, 18 Cl. Ct. 267, 281 (Cl. Ct. 1989)). *See also Bourne*, 68 F.3d at 629 ("In order to analyze Bourne's contention that Disney has no right to produce videocassettes utilizing the Compositions, we first must look to the specific language of the grants. If the production of home videocassettes clearly falls outside the scope of the grants, then Disney's use of the Compositions was unauthorized as a matter of law…") (emphasis added).

The U.S. Court of Federal Claims' holding in *Cohen* is instructive in this case. There, the question before the court was whether a written copyright assignment agreement that gave the U.S. government the right to publish and market certain works in paper, diskette, and CD-ROM also gave the government the right to reproduce those images on the Internet. *Cohen*, 98 Fed. Cl. at 164. In that case, the court held that "[w]hile contending that the broad language in clause 10" of the agreement meant that plaintiff had "transferred his rights to reproduce, display and distribute his works on the Internet," the defendant "overlook[ed] that the contract specifically limit[ed] the format in which [it] may publish and market the works to 'paper, diskette, and CD–ROM,'" and that the same clause "also reserve[d] to [plaintiff] the right to prepare and publish derivative works 'in scholarly books and journals' and anywhere that is not 'likely to compete with or injure the sale of the Work in the public marketplace.'" *Id*. at 165. The court therefore

denied the defendant's motion for reconsideration of its denial of defendant's motion for summary judgment on plaintiff's copyright infringement claims. *Id*. at 167.

Similarly, in this case, FedEx urges the Court to focus on the broad language in the License while "overlook[ing] that the [License] specifically limits" its grant of rights to "NonCommercial purposes only" and specifically "reserves any right to collect…royalties… when the Licensed Material is used other than for NonCommercial purposes." *Id*. at 165; Compl. ¶ 12, Ex. B §§ 2(a)(1)(A), 2(b)(3). There can be no genuine dispute that FedEx's reproduction of Great Minds' Material <u>for its own profit</u> is a commercial activity, and thus exceeds the expressly limited scope of the License.[2] *See Basic Books v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1531 (S.D.N.Y. 1991) ("The use of the Kinko's packets, in the hands of the students, was no doubt educational. However, the use in the hands of Kinko's employees is commercial.").

In its motion, FedEx attempts to deflect attention from its unauthorized and infringing commercial activities by arguing that its commercial reproduction of the Material is permissible under the License because the reproductions are made "to assist licensee school districts in exercising their [non-commercial use] rights under the License" and because the "terms of the License are unambiguous and reflect no intent by Great Minds to prevent delegation." Mot. at 4, 6-7. This argument is unavailing for two independent reasons.

### A.   FedEx Does Not Stand in the Shoes of Its Customers When It Reproduces Great Minds' Material for Its Own Profit.

FedEx's delegation argument would be persuasive if it were reproducing the Material at cost (*i.e.*, without making any profit itself) as a *pro bono* service for schools, and thus making a strictly noncommercial use of the Material – a right that the schools themselves are granted

---

[2] Black's Law Dictionary defines "commercial" as follows: "Relates to or is connected with trade and traffic or commerce in general; is occupied with business and commerce. Generic term for most all aspects of buying and selling."

under the License. But when FedEx reproduces the Material for its own profit, it exceeds the scope of the License and infringes Great Minds' copyrights; since schools themselves do not have the right under the License to make such commercial use of the Material, it stands to reason that they cannot delegate such a right to FedEx. *See*, *e.g.*, *John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262, 287 (S.D.N.Y. 2014) ("It is black-letter law that a claim for copyright infringement lies when a party's use of copyrighted material exceeds the scope of its license") (internal quotation marks and citations omitted); *Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 44 (1st Cir. 2010) (holding "[t]hat control was, of course, limited by the scope of the license. So viewed, the relevant question reduces to whether [the licensee's delegate], acting for the license holder, observed those limits.") (emphasis added); *cf. Hogan Sys., Inc. v. Cybresource Int'l, Inc.*, 158 F.3d 319, 324 (5th Cir. 1998) ("what [the licensee] may do itself under the License, [the licensee] may use a contractor to do") (emphasis added).

Two fair-use cases involving reproduction of course packs by commercial copy shops at the request of professors are on point here. *See Princeton Univ. Press v. Mich. Document Servs.*, 99 F.3d 1381 (6th Cir. 1996); *Basic Books*, 758 F. Supp. 1522. The Sixth Circuit's reasoning in *Princeton Univ. Press*, holding that the challenged use (*i.e.*, reproduction of course packs by a commercial shop) was commercial in nature, applies squarely to the dispute at hand:

> It is true that the use to which the materials are put by the students who purchase the coursepacks is noncommercial in nature. But the use of the materials by the students is not the use that the publishers are challenging. What the publishers are challenging is the duplication of copyrighted materials for sale by a for-profit corporation that has decided to maximize its profits—and give itself a competitive edge over other copyshops—by declining to pay the royalties requested by the holders of the copyrights.

8

99 F.3d at 1386 (emphasis added). The Sixth Circuit went on to reject the argument that the commercial copy center stood in the shoes of its customers when it made the reproductions for their noncommercial use:

> Two of the dissents suggest that a copyshop merely stands in the shoes of its customers and makes no "use" of copyrighted materials that differs materially from the use to which the copies are put by the ultimate consumer. But subject to the fair use exception, 17 U.S.C. § 106 gives the copyright owner the "exclusive" right "to reproduce the copyrighted work in copies...." And if the fairness of making copies depends on what the ultimate consumer does with the copies, it is hard to see how the manufacture of pirated editions of any copyrighted work of scholarship could ever be an unfair use. As discussed in Part III A, infra, the dissenters' suggestion—which proposes no limiting principle—runs counter to the legislative history of the Copyright Act and has properly been rejected by the courts.

*Id*. at 1386 n. 2. *See also Basic Books*, 758 F. Supp. at 1531 ("The use of the Kinko's packets, in the hands of the students, was no doubt educational. However, the use in the hands of Kinko's employees is commercial.").

The same reasoning applies here, where FedEx, "a for-profit corporation…has decided to maximize its profits—and give itself a competitive edge over other copyshops [and Great Minds, the copyright owner itself]—by declining to pay the royalties requested by" Great Minds for commercial reproductions of the Material made by FedEx. *Princeton Univ. Press,* 99 F.3d at 1386. This is precisely the sort of commercial use for which Great Minds has expressly reserved the right to collect royalties under the License. Compl. ¶ 12, Ex. B §§ 2(a)(1)(A), 2(b)(3). FedEx's interpretation of the License, in fact, would render § 2(b)(3) of the License meaningless, as there is no conceivable use of the Material under FedEx's interpretation that would trigger Great Minds' reserved right to collect royalties, since every commercial copier would simply point to its customers' ultimate noncommercial use of the Material to shield its unauthorized

commercial activities.[3] For this reason alone, the Court should reject FedEx's urged interpretation and deny the motion to dismiss. *See Galli v. Metz*, 973 F.2d 145, 149 (2d Cir.1992) ("an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless...is not preferred and will be avoided if possible. Rather, an interpretation that gives a reasonable and effective meaning to all terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect") (citations and quotations omitted).

The main cases relied upon by FedEx for its argument – *Estate of Hevia.*, 602 F.3d 34, *Automation by Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 757 (7th Cir. 2006), and *Hogan Sys.*, 158 F.3d 319 – actually support Great Minds' claim here to the extent they are not inapposite. *See* Mot. at 4-6. *Estate of Hevia* is inapposite in that it involved an implied license, the central issue of the case was who controlled the license, the license was not a public one, and, most important, there was no relevant restriction of rights made in the license (as there is here). But the First Circuit in *Estate of Hevia* made clear that a court will look carefully at and enforce the specific terms and scope of a license. In particular, as noted above, the *Estate of Hevia* court observed "[t]hat control was, of course, limited by the scope of the license. So viewed, <u>the relevant question reduces to whether [the licensee's delegate], acting for the license holder, observed those limits</u>." 602 F.3d at 44 (emphasis added). Here, the License clearly is restricted to noncommercial use only, specifically reserves Great Minds' right to collect royalties for all commercial uses, and FedEx has not "observed those limits." *Id.*; Compl. ¶ 12, Ex. B §§ 2(a)(1)(A), 2(b)(3).

---

[3] Because Great Minds' Material is educational curricula for use with K-12 education, every commercial actor could simply claim that they are acting as the "agent" of the students, teachers, or schools making noncommercial use of the Material, effectively erasing the commercial/noncommercial distinction drawn in the License.

10

*Raybestos* is similarly inapposite in its facts, but, like *Estate of Hevia*, it shows the importance that courts place on the specific terms of a license. In that case, the owner of the copyright in machine drawings brought an action against a licensee and its contractor for copyright infringement in connection with the transfer by the licensee of the drawings to its contractor for the purpose of building a similar machine. The court ultimately concluded that there was no copyright infringement, but it did so based on a careful analysis of the terms of the written license:

> This conclusion—that no transfer occurred—wraps up all but one aspect of the copyright infringement claims in this case. ABD argues that although Raybestos could duplicate and manufacture parts of the machinery on its own, it could not duplicate the machinery as a whole. But once ABD admitted that Raybestos could duplicate parts of the equipment for maintenance and repair, this fight was over. **For there is nothing in the contract language that would distinguish between copying and making derivative works for one or more parts, from copying the machine as a whole**. And, as explained above, whatever rights Raybestos had to duplicate, it could hire PDSI to do so in its stead. The dissent argues that the right of duplication was limited to the "project" which the dissent claims was only the "first machine." Post at 762. From this the dissent concludes that "Raybestos's implied right of distribution should not extend beyond making spare and replacements parts for the first machine because ABD has not admitted such a right of distribution." Id. (emphasis ours). **But this leap in logic works only if we grant ABD's request to interpret the contract to add such limiting language—that is if we accept ABD's contention that the contract implies something that it does not say**. And for the reasons described above, we cannot. Furthermore, the language points to the opposite result. If the license grants a right of duplication as it relates to the project, as the dissent states, and the project is defined as the first machine, then Raybestos had the right to duplicate the first machine in toto. The district court correctly granted summary judgment for Raybestos and PDSI on this copyright infringement claim.

463 F.3d at 758 (emphasis added). Unlike in *Raybestos*, the case at hand requires no "leap in logic." *Id*. The written License language here contains limiting language that draws an express distinction between permitted noncommercial use and unauthorized commercial use. FedEx – and every other person or firm in the world – is permitted to make noncommercial use of Great

11

Minds' Material, but specifically barred by the License from making unauthorized commercial uses. As discussed above, FedEx's use for its own profit is incontrovertibly commercial.

*Hogan Sys*. likewise is inapposite to the facts of this case, as that case involved a license that "expressly permit[ted the licensee] to bring [a third-party contractor] onto its premises to work as an independent software contractor upon [the licensor's] Software." 158 F.3d at 323. The license in that case "provide[d] that [the licensee would] not make the licensed software available to anyone: 'except to [the licensee's] employees or [the licensor's] employees or to other persons during the period such other persons are on [the licensee's] premises for purposes specifically relating to [the licensee's] authorized use of the licensed program.'" *Id*. at 322. In contrast, the License at issue in this case contains no provision permitting school districts to delegate their noncommercial reproduction rights to commercial copy-shops to make commercial reproductions.

Additionally, "[a]fter observing that the Licensing Agreements permit[ted the licensee] to do the acts complained of," in *Hogan Sys*. "the [district] court concluded that '[w]hat [the licensee] could itself do under the License, [the licensee could] use a contractor to do." *Id*. at 324 (emphasis added). Here, in contrast, the License permits anyone to use the Material for noncommercial purposes only, but expressly prohibits unauthorized commercial use, reserving Great Minds' rights to collect royalties for such uses. *See* Compl. ¶ 12, Ex. B §§ 2(a)(1)(A), 2(b)(3). Because school districts do not have a right under the License to make commercial uses of the Material – including commercial reproductions – they simply cannot delegate that right to FedEx.

The Fifth Circuit's decision in *Compliance Source, Inc. v. GreenPoint Mortg. Funding, Inc.*, which distinguished *Hogan Sys*., is more instructive in this case. 624 F.3d 252 (5th Cir.

2010). In *Compliance Source*, the licensors (software developers) brought suit against a licensee for breach of a license agreement because the licensee gave input access to the licensee's attorneys in violation of the written license agreement; the defendant there argued that it simply had delegated its rights under the license to its agent-attorneys. The Fifth Circuit reversed summary judgment and held for the licensors, closely analyzing the language of the license to conclude that the licensee indeed had breached the license. In so doing, the court held that a court cannot "look past the actual language of a licensing agreement and absolve a licensee who grants third-party access merely because that access is on behalf of, or inures to the benefit of, the licensee." *Id*. at 259. The *Compliance Source* court explained that the agreement in that case:

> …contain[ed] no provision that generally permit[ed] GreenPoint to grant third-party access, whether or not such access would be on behalf of or for the benefit of GreenPoint, and GreenPoint ha[d] not pointed to any provision that g[ave] it that right. In fact, the agreement [did] exactly the opposite; it provide[d] that it [did] not grant to GreenPoint any right to "copy, make, use, have made, sell, support, or sub-license" the licensed technology except as specifically provided. In addition, the agreement expressly prohibit[ed] transfer or sublicense of the technology; withh[eld] from GreenPoint any ownership or proprietary interest in the technology; and restrict[ed] GreenPoint's ability to reproduce or alter the technology, use the technology in competition with Plaintiffs, assign its duties under the agreement to a third party, or confer any right under the agreement upon a third party.

*Id*. at 260.

The court's analysis in *Compliance Source* is relevant to this case insofar as the License at issue here clearly "withholds rights not expressly given," *id*., – *i.e.*, all rights other than those for noncommercial use, and specifically the right to collect royalties when the materials are reproduced for commercial purposes – and the License does not give noncommercial users any right to delegate their noncommercial use rights for commercial purposes, such as FedEx's reproduction for its own profit. *See* Compl. ¶ 12, Ex. B §§ 2(a)(1)(A), 2(b)(3).

13

For these reasons, FedEx's argument that its commercial reproduction of Great Minds'

Material is permissible because FedEx is simply acting as a delegate of its noncommercial

customers under the License must be rejected, and the Court should deny FedEx's motion to

dismiss in its entirety.

### B.      FedEx Is A Direct Infringer of Great Minds' Material.

Under established Second Circuit case law, FedEx is liable as a direct infringer of Great

Minds' copyrights in this case. To "state a claim for copyright infringement, a plaintiff must

establish that it owns a valid copyright in the work at issue and that the defendant violated one of

the exclusive rights the plaintiff holds in the work." *Capitol Records, LLC v. ReDigi Inc.*, 934 F.

Supp. 2d 640, 648 (S.D.N.Y. 2013) (citing *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996

F.2d 1366, 1372 (2d Cir. 1993)). These exclusive rights include the rights of reproduction and

distribution. *See id.* at 651. "When there is a dispute as to the author of an allegedly infringing

instance of reproduction, [*Religious Tech. Ctr. v. Netcom On-Line Commc'n Serv., Inc.*, 907 F.

Supp. 1361 (N.D.Ca. 1995)] and its progeny direct our attention to the volitional conduct that

causes the copy to be made." *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121,

131 (2d Cir. 2008). *See also ReDigi*, 934 F. Supp. 2d at 656. In "determining who actually

'makes' a copy, a significant difference exists between making a request to a human employee,

who then volitionally operates the copying system to make the copy, and issuing a command

directly to a system, which automatically obeys commands and engages in no volitional

conduct." *Cartoon Network*, 536 F.3d at 131.

Here, Great Minds owns valid copyrights in the Material. Compl. ¶¶ 9-10, Ex. A. FedEx

violates Great Minds' exclusive rights of reproduction and distribution each time one of its retail

stores reproduces or distributes the Material for FedEx's profit without authorization from Great

14

Minds. *See* Mot. at 2; Compl. ¶¶ 16, 19. When FedEx "assists school districts, at the school districts' request, in making copies of the" Material, Mot. at 2, FedEx makes the copies after a school district issues "a request to a human [FedEx] employee, who then volitionally operates the copying system to make the copy…" *Cartoon Network*, 536 F.3d at 131. This is precisely the kind of conduct that the Second Circuit has held to satisfy the volitional requirement for direct infringement. *See id*. at 131-32 (distinguishing the acts in that case, which the Second Circuit held not to be directly infringing, from the commercial copy-shop's volitional, directly infringing conduct, like FedEx's here, in *Princeton Univ. Press*, 99 F.3d 1381).

Accordingly, FedEx has directly infringed Great Minds' copyrights, and the Court should deny FedEx's motion to dismiss in its entirety.

## II.   GRANTING FEDEX'S MOTION WOULD CREATE BAD PUBLIC POLICY

FedEx takes the audacious position in this case that it should have the right to profit by commercially reproducing Great Minds' Material without a license and without paying Great Minds a royalty simply because Great Minds has made the Material available publicly for free noncommercial use under the License. But Great Minds would not make the Material or its other curricula materials available publicly for free noncommercial use under the License if in doing so Great Minds gave up its expressly reserved right to charge a royalty for commercial use, including reproduction, of those materials. Compl. ¶ 15. Great Minds is a 501(c)(3) non-profit that uses such royalties and revenues from its own sales of its materials to, *inter alia*, improve its existing curriculum and develop new curriculum. Compl. ¶¶ 8, 11, 15. A ruling by this Court in favor of FedEx thus would have a significant chilling effect on Great Minds', and likely others', activities that benefit the public, both by discouraging Great Minds and others like it from

15

making their educational materials freely available for noncommercial use and by depriving them of much needed revenues to support their public, non-profit missions.

A ruling in favor of FedEx in this case thus would run contrary to the "'interests of the Copyright Act' –specifically…'to maximize the public exposure to valuable works.'" *Mahan v. Roc Nation, LLC*, No. 14 Civ. 5075(LGS), 2015 WL 4388885, *2 (S.D.N.Y. July 17, 2015) (quoting *Mitek Holdings, Inc. v. Arce Eng'g Co.*, 198 F.3d 840, 842-43 (11th Cir. 1999) (quoted with approval in *Matthew Bender & Co. v. W. Pub. Co.*, 240 F.3d 116, 122 (2d Cir. 2001)). Particularly in light of the public policy harm that would result from the adoption of FedEx's position, this Court should reject FedEx's interpretation of the License that ignores the specific, express limitations that prohibit FedEx's unauthorized commercial reproduction and distribution of the Material. *See Galli*, 973 F.2d at 149 ("an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless...is not preferred and will be avoided if possible. Rather, an interpretation that gives a reasonable and effective meaning to all terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect") (citations and quotations omitted).

## III.    THE COURT SHOULD DENY FEDEX'S REQUEST FOR ATTORNEYS' FEES

Because FedEx has deliberately ignored specific, limiting language in the License and dispositive case law in forcing Great Minds to bring this case and in FedEx's motion to dismiss, as discussed above, Great Minds is the party with ample grounds to recover its attorneys' fees at the end of this case, and Great Minds intends to make a motion for such at the appropriate time.

Even if the Court were to grant FedEx's motion to dismiss, however, Great Minds' claim is not objectively unreasonable – the sole basis on which FedEx seeks an award of attorneys' fees, *see Mot*. at 8-9 – for the reasons discussed above; namely, because the License at issue here

contains express limiting provisions (one of which FedEx wholly ignores in its argument) that

prohibit FedEx's commercial activities using Great Minds' Material, and because all of the cases

cited by FedEx inappositely involve licenses that either expressly permit the alleged infringing

activity or contain no limiting provisions similar to those in the License here. Even if this Court

does not find Great Minds' claim to be as clear-cut as Great Minds sees it based on the case law

discussed above, Great Minds' claim at a minimum is a novel and close one – as no court has

addressed whether commercial printers may freely reproduce materials made available under the

public Creative Commons License or a license with express limitations similar to the one at issue

here – and the issue is a worthy one for this Court to address based on the public policy

considerations discussed in section II, *supra*.

      "'Because copyright law ultimately serves the purposes of enriching the general public

through access to creative works, it is peculiarly important that the boundaries of copyright law

be demarcated as clearly as possible.'" *Canal+ Image UK Ltd. v. Lutvak*, 792 F. Supp. 2d 675,

683 (S.D.N.Y. 2011) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994)). "'But

because novel cases require a plaintiff to sue in the first place, the need to encourage meritorious

defenses is a factor that a district court may balance against the potentially chilling effect of

imposing a large fee award on a plaintiff, who, in a particular case, may have advanced a

reasonable, albeit unsuccessful, claim.'" *Id.* (*quoting Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140

F.3d 70, 75 (1st Cir. 1998)). Thus, "a court should not award attorneys' fees where the case is

novel or close" – which is the case here, if the Court does not see it to be as one-sided as Great

Minds does – "because such a litigation clarifies the boundaries of copyright law." *Id.* (internal

quotation marks and citation omitted).

Moreover, the "*Fogerty* factors" – including objective unreasonableness – "are relevant…only to the extent they align with the purposes of the Copyright Act." *Mahan*, 2015 WL 4388885 at *2. *See Fogerty*, 510 U.S. at 534 n. 19 ("[S]uch factors may be used to guide courts' discretion, so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner.") (emphasis added). The "'touchstone of ... § 505 is whether imposition of attorney's fees will further the interests of the Copyright Act'-specifically, 'encouraging the raising of objectively reasonable claims and defenses, ... not only to deter infringement but also to ... to maximize the public exposure to valuable works.'" *Mahan*, 2015 WL 4388885 at *2 (quoting *Mitek Holdings*, 198 F.3d at 842–43). Here, granting FedEx's motion to dismiss and awarding FedEx attorneys' fees would run counter to the interests of the Copyright Act – specifically, "maximiz[ing] the public exposure to valuable works," *id*. – by forcing Great Minds (and likely others) to discontinue providing educational materials for free noncommercial use to the public in order to preserve the right to earn royalties from commercial use and prevent unfair competition. *See* Compl. ¶¶ 8, 11, 15.

Accordingly, even if the Court were to grant FedEx's motion to dismiss, the Court should not exercise its equitable discretion to award attorneys' fees to FedEx in this case. Additionally, although FedEx has not argued on this motion that Great Minds has failed sufficiently to plead its claim for copyright infringement, if the Court finds the allegations in Great Minds' complaint deficient in any respect, the Court should deny FedEx's request for attorneys' fees while granting FedEx's motion without prejudice and granting Great Minds the opportunity to replead. *See Lambertini v. Fain*, No. 12–CV–3964 (DRH)(ARL), 2014 WL 4659266, *4-5 (E.D.N.Y. Sept. 17, 2014) (Hurley, J.) (granting motion to dismiss copyright infringement claim but denying defendant's request for attorneys' fees and granting plaintiff the opportunity to replead).

18

## CONCLUSION

For the foregoing reasons, Great Minds respectfully submits that FedEx's motion to dismiss should be denied in its entirety. To the extent that the Court is inclined to grant the motion in part or in full, Great Minds requests that the Court grant it leave to amend. *See* FRCP 15 (leave to amend should be "freely" granted).

Dated: New York, New York
      August 5, 2016

Respectfully submitted:

LAW OFFICE OF RHETT O. MILLSAPS II

Rhett O. Millsaps II
745 Fifth Avenue, Suite 500
New York, NY  10151
Phone:  (646) 535-1137
Fax:  (646) 355-2816
Email:  rhett@rhettmillsaps.com

*Attorneys for Plaintiff Great Minds*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 5, 2016, I caused a true and correct copy of the above and foregoing Plaintiff Great Minds' Memorandum of Law in Opposition to Defendant's Motion to Dismiss to be served by electronic mail upon the following:

> Mark D. Taylor, Esq.
> mark.taylor@bakermckenzie.com
> Nicholas O. Kennedy, Esq.
> nicholas.kennedy@bakermckenzie.com
> BAKER & MCKENZIE LLP
> 2300 Trammell Crow Center
> 2001 Ross Avenue
> Dallas, TX  75201

Rhett O. Millsaps II