UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREAT MINDS,<br><br>        Plaintiff,<br><br>-against-<br><br>FEDEX OFFICE AND PRINT SERVICES, INC.,<br><br>        Defendant. | INDEX NO.  2:16-cv-01462-DRH-ARL<br><br>ECF CASE<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS** |

BAKER & McKENZIE LLP
Mark D. Taylor (*pro hac vice*)
mark.taylor@bakermckenzie.com
Nicholas O. Kennedy (*pro hac vice*)
nicholas.kennedy@bakermckenzie.com
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX  75201
Telephone:  +1 214 978 3000
Facsimile:  +1 214 978 3099

**Attorneys for Defendant
FedEx Office and Print Services, Inc.**

August 24, 2016

Defendant FedEx Office and Print Services, Inc. ("FedEx Office") respectfully submits this Reply in Support of its Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and this Court's order dated June 6, 2016 and requests that this case be dismissed with prejudice.

## I.  INTRODUCTION

Great Minds cannot escape the unambiguous rule that "[w]hen … there is no indication that a license-granting copyright owner has restricted the licensee's ability to use third parties in implementing the license, the license is generally construed to allow such delegation." *Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 44-45 (1st Cir. 2010).  There is no dispute that the License at issue here contains no restriction on delegation.  FedEx Office may therefore step into the shoes of its school district customers to assist them in exercising their rights to non-commercial use of the materials.

Great Minds' attempt to save its case must fail.  First, its argument about the "plain language" of the License ignores that delegation is allowed because the License is silent on delegation.  Moreover, the license provision that Great Minds claims prevents FedEx Office's actions is irrelevant to the issue at hand because it focuses on the use by the Licensee school districts, not FedEx Office.  Second, the fair-use cases that Great Minds cites are inapposite. Unlike here, in those cases there was no license and therefore the defendant copy shop could not step into its customers' shoes as FedEx Office does here.

Great Minds' public policy argument is equally unavailing.  Applying the rule Great Minds seeks to create would harm the public interest by restricting access to educational and other materials produced by hundreds of thousands of other content creators.  Such a result would be contrary to both Great Minds' own stated educational purpose and the purpose of the Creative Commons license which is meant to make materials provided thereunder as widely

available as possible. This Court should not interpret the License in a manner that would restrict access by millions of users to hundreds of thousands of works worldwide.

Try as it might, Great Minds cannot change the clear law. As explained by the First Circuit, the "enlistment of third parties does not transmogrify a non-infringing use into an infringing use." *Hevia* 602 F.3d at 44. FedEx Office is simply a third-party assisting its school district customers in a non-commercial, non-infringing use—distribution to their students. Great Minds' Complaint should be dismissed.

## II.     ARGUMENTS AND AUTHORITIES

**A.     Great Minds does not dispute that the License does not prohibit delegation and that a silent license allows delegation of activities within the scope of the license**

Great Minds cannot escape the clear-cut rule allowing school districts to delegate their reproduction right to FedEx Office. Indeed, Great Minds does not dispute that "[w]hen … there is no indication that a license-granting copyright owner has restricted the licensee's ability to use third parties in implementing the license, the license is generally construed to allow such delegation." *Estate of Hevia*, 602 F.3d at 44-45. Nor does Great Mind dispute that there is no such limitation in the License.

As explained in the Motion to Dismiss, this rule was applied by the Seventh Circuit in *Raybestos* by analogy to FedEx Office (formerly Kinko's) as the "clear-cut example" of why delegation of licensed rights to third parties must be allowed. *Automation by Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 757 (7th Cir. 2006); *see* Mot. at 5-6. As that court explained, "if [licensee] lacked the capacity to manufacture parts on its own, it had the right to hire another to do so in its stead." *Raybestsos*, 463 F.3d at 757. It mattered not that the contractor hired would benefit from the delegated tasks because "it benefitted in the same way that [Kinko's] might benefit from being awarded a photo copy job." *Id.*

This rule compels a finding of non-infringement. Like the contract manufacturer in *Raybestos*, FedEx Office merely assists school districts to exercise their licensed rights by allowing the reproduction that those school districts may make on their own, but for which they lack the appropriate expertise or equipment. And like the benefit to the contractor in *Raybestos*, the fact that FedEx Office may make money does not change this result. The "use" must be measured by the licensee's use—not a third party to whom the licensee delegates its rights. The licensees in this case are the school districts, not FedEx Office. The school districts are using the licensed materials for an undisputed educational, non-commercial purpose. FedEx Office is indisputably assisting in that licensed use and therefore is not infringing.

**B.     Great Minds' citation to cases construing different licenses or no license at all do not save its case**

Great Minds cites no cases to contradict the clear rule that a licensee may delegate licensed tasks to others. Instead, it cites irrelevant cases that either (a) involve no license at all; or (b) do not involve a third party.

First, Great Minds argues that "[t]wo fair use cases involving reproduction of course packs by commercial copy shops at the request of professors are on point here." Resp. at 8 (citing *Princeton Univ. Press v. Mich. Document Servs.*, 99 F.3d 1381 (6th Cir. 1996); *Basic Books v. Kinko's Graphics Corp.*, 758 F. Supp. 1522 (S.D.N.Y. 1991)). Great Minds is mistaken. These cases are fundamentally different because in those cases the customer requesting the print job did not have a license to make the reproductions at issue. Because there was no license, the printers could not step into the shoes of their customers and make copies on their behalf. Here, of course, the school districts are expressly licensed to make reproductions and FedEx Office may therefore step into their shoes.

Because their customers had no license, the defendants in *Princeton* and *Basic Books*

relied on the fair use defense to excuse their copying. Unlike those defendants, **FedEx Office does not rely on the fair use defense**. This distinction is critical because the fair use defense requires a full analysis of the use of the material under the factors in 17 U.S.C. § 107, including the intentions of the party invoking it. *See*, *e.g., Princeton*, 99 F. 3d at 1385.

After conducting the multi-factor fair use analysis, *Princeton* and *Basic Books* concluded that fair use rights cannot be exercised derivatively. In stark contrast, *Hevia*, *Raybestos*, and *Hogan* all expressly hold that rights under an express license may be exercised derivatively as FedEx Office does here. The fact that the defendants whose customers had no license in *Princeton* and *Basic Books* could not step into their customers' shoes to assume their fair use defense has no bearing on this case with a valid license where fair use is not at issue. FedEx Office's customers had a license to reproduce and FedEx Office properly stepped into their shoes to make the reproductions that those customers were unable or unwilling to make on their own. *See, e.g., Hogan Sys. v. Cybresource Int'l, Inc.*, 158 F.3d 319, 324 (5th Cir. 1998) (rejecting infringement claim because third party's activities were in support of licensee: "what Norwest could itself do under the License, Norwest may use a contractor to do"); *Raybestsos*, 463 F.3d at 757.

Great Minds' citation to *Cohen* is similarly unhelpful. *See* Resp. at 7. *Cohen* does not address the use of third parties to assist a licensee in exercising licensed rights as FedEx Office does here. *See Cohen v. U.S.*, 98 Fed. Cl. 156, 165 (Fed. Cl. 2011). Instead, *Cohen* stands for the unremarkable proposition that a licensee itself may not exercise rights that are not granted to it in the license. *Id.* There, the licensee's attempt to expand its rights beyond copying in the formats expressly set forth in the license to a general right of reproduction on the Internet was rejected. *Id.* Here, there is no dispute that the reproduction right exercised by the school

districts (through FedEx Office) is squarely within the school districts' rights under the License. *See* Mot. at 2 (citing Compl. ¶ 12; License (Ex. B) §§ 1(l); 2(a)(1)(A)). *Cohen* does not help Great Minds' case.

C. **Great Minds' misinterpretation of the License's reservation of rights does not save its case**

Great Minds' attempt to read into the license a limitation that does not exist must be rejected. Great Minds appears to concede, as it must, that FedEx Office may exercise its customers' licensed rights. *See* Resp. at 7-8. Great Minds is therefore forced to argue that FedEx Office's activities exceed the scope of the License. *Id.* Great Minds is wrong.

The foundation of Great Minds' argument is a provision from the License by which Great Minds claims it has "expressly reserved the right to collect royalties under the License." Resp. at 9 (citing Compl. ¶ 12, License (Compl. Ex. B) §§ 2(a)(1)(A), 2(b)(3)). That provision states: "To the extent possible, the Licensor waives any right to collect royalties from You for the exercise of the Licensed Rights … . In all other cases the Licensor expressly reserves any right to collect such royalties, including when the Licensed Material is used for other than NonCommercial purposes." License (Compl. Ex. B) § 2(b)(3). This provision does not have the effect Great Minds wishes.

This clause has no bearing on the ability of licensee school districts to delegate to third parties. Instead, it is a reservation of rights that allows Great Minds to collect damages from the licensee if the licensee itself exceeds the scope of the license by, for example, selling licensed materials to the public at large instead of distributing them to students. Like all other terms of the License, it focuses on the activities of the licensee—not those of FedEx Office. Great Minds

does not argue that FedEx Office is a licensee.[1] Accordingly, FedEx Office's activities are not governed by this license term (or any other). The only use that must be examined is the use by the licensee school districts.[2] And because there is no allegation that licensee school districts are making non-commercial use of the materials, this term is irrelevant.

Importantly, this clause does not purport to restrict licensee school districts from delegating their right of reproduction to FedEx Office. School districts remain expressly entitled to reproduce materials for non-commercial use (i.e. distribution to students). By virtue of *Hevia*, *Raybestos*, and *Hogan*, those school districts may delegate that authority to FedEx Office. If Great Minds intended to restrict this delegation right, it should have clearly stated this restriction in the License. *See Spinelli v. NFL*, 96 F. Supp. 3d 81, 122 (S.D.N.Y. 2015) (quoting *Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, 145 F.3d 481, 487 (2d Cir. 1998)) ("The licensor who argues that there should be an exception or deviation from the meaning reasonably conveyed by the language of a license loses, because he or she 'should bear the burden of negotiating for language that would express the limitation or deviation.'").

The license is more than just silent on delegation. The License defines "Share" as "to provide material to the public by any means or process … such as reproduction …. ." License

---

[1] Such an argument would be doomed to fail. The mere offer of an agreement by Great Minds of a license agreement to the public at large does not bind FedEx Office. FedEx Office must take some affirmative action, beyond mere reproduction of the Licensed Materials provided to it by licensee school districts, to "manifest assent to such a license agreement." *See Specht v. Netscape Commc'ns, Corp.*, 150 F. Supp. 2d 585, 595 (S.D.N.Y. 2001); *see also Estate of Hevia*, 602 F.2d at 41 (explaining that "implied licenses are found only in narrow circumstances" and that "[t]he touchstone to grant an implied license is intent. We ask whether the totality of the parties' conduct indicates an intent to grant such permission").

[2] This conclusion is supported by the definition of "NonCommercial" in the License. That agreement states that NonCommercial use is use that is "not primarily intended for or directed towards commercial advantage or monetary compensation." *See* License (Compl. Ex. B) §1(k). In other words, any incidental financial benefit received by FedEx Office in assisting licensees with their primarily non-commercial use is irrelevant.

(Compl. Ex. B) ¶ 1(l). The inclusive language "any means or process" indicates an intent to allow licensees broad latitude in exercising their licensed right to reproduce and distribute the materials for non-commercial use. This includes enlisting third parties. Simply put, FedEx Office is the "means or process" the licensee school districts chose to exercise their contractual right to reproduction.

Great Minds' attempt to distinguish *Raybestos* and the other cases authorizing FedEx Office's copying is unpersuasive. Great Minds argues that those cases "show[] the importance that courts place on the specific terms of the license." Resp. at 11. Great Minds is correct—the license terms are important. But as established above, those terms do not prevent delegation. Nor do they restrict the actions of third-party FedEx Office. Instead, they require only that the licensee school districts use the materials for non-commercial purposes. It is undisputed that they do, and Great Minds' argument must therefore be rejected.

Great Minds' attempt to imply into the contract a nonexistent limitation on third-party delegation must be rejected. Just as in the portion of the *Raybestos* opinion quoted in bold by Great Minds, Great Minds' argument that school districts may not delegate their rights to FedEx Office is a "leap of logic [that] works only if [the Court] grant[s] [Great Minds'] request to interpret the contract to add such limiting language—that is if [the Court] accept[s] [Great Minds'] contention that the contract implies something it does not say." *Raybestos*, 463 F.3d at 758; *see* Resp. at 11. The License contains no prohibition on delegation. FedEx Office's actions are authorized.

D.  **Great Minds' interpretation of the License is contrary to public policy as explained by the drafter of the License**

Great Minds' sky-is-falling policy argument does not help its case. Great Minds asserts that "[a] ruling by this Court in favor of FedEx [Office] … would have a significant chilling

effect on Great Minds', and likely others', activities that benefit the public." Great Minds further claims that it "would not make the materials available publicly for free noncommercial use under the License if in doing so Great Minds gave up its expressly reserved right to charge a royalty for commercial use." Resp. at 15. Not so.

This is a false dichotomy. There is no requirement that Great Minds use the Creative Commons license. It can switch to a different license at any time containing the (nonexistent) restriction on third-party copying it seeks to read into the Creative Commons license. The Creative Commons license should not be interpreted in a manner that is a) contrary to the purpose of the license; and b) harmful to the hundreds of thousands of entities using the license solely so that Great Minds may avoid the minor inconvenience of drafting its own license. *See Hogan*, 158 F.3d at 323 (concluding that if licensor wanted to prevent delegation of rights under license, "it should state this intent"); *Spinelli*, 96 F. Supp. 3d at 122 (stating that if plaintiffs wanted to vary the default rule allowing sublicenses, "such a term should have been negotiated and included explicitly").

Indeed, the interpretation urged by FedEx Office is consistent with the purpose of the Creative Commons license to make educational and other materials widely available. Great Minds' interpretation would disrupt the well-established licensing scheme Creative Commons has put in place. This would likely cause hundreds of thousands of content creators to cease using the Creative Commons license and draft their own license, leading to a great number of works ceasing to be distributed. Such a result must be avoided.

### III. CONCLUSION

Both the law and policy favor rejecting Great Minds' misinterpretation of the Creative Commons license and granting FedEx Office's Motion to Dismiss. Accordingly, and for the reasons stated above, FedEx Office respectfully requests that the Court dismiss all claims against

it with prejudice and award FedEx Office the costs and reasonable attorney's fees incurred in defense of this action, along with all other relief to which FedEx Office is justly entitled.

Dated: August 24, 2016

Respectfully submitted,

BAKER & McKENZIE LLP

By: */s/ Mark D. Taylor*
Mark D. Taylor (*pro hac vice*)
mark.taylor@bakermckenzie.com
Nicholas O. Kennedy (*pro hac vice*)
nicholas.kennedy@bakermckenzie.com

2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201
Telephone: +1 214 978 3000
Facsimile: +1 214 978 3099

**Attorneys for Defendant
FedEx Office and Print Services, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2016, I caused a true and correct copy of the above and foregoing **Defendant's Reply in Support of its Motion to Dismiss** to be served via email and U.S. Mail on:

Rhett O. Millsaps II
Rhett@rhettmillsaps.com
LAW OFFICE OF RHETT O. MILLSAPS II
745 Fifth Avenue, Suite 500
New York, NY 10151

*/s/ Nicholas O. Kennedy*
Nicholas O. Kennedy