**LATHAM & WATKINS LLP**

505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Tel: +1.415.391.0600  Fax: +1.415.395.8095
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Barcelona | Moscow |
| Beijing | Munich |
| Boston | New Jersey |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | Rome |
| Frankfurt | San Diego |
| Hamburg | San Francisco |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

August 30, 2016

**VIA CM/ECF**

The Honorable Denis R. Hurley
Senior Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

Re:  *Great Minds v. FedEx Office and Print Services, Inc.*,
<u>Case No. 16-cv-01462-DRH-ARL</u>

Dear Judge Hurley,

      We represent Creative Commons Corporation in connection with the above-referenced matter, and seek the Court's permission to file an *amicus* brief supporting the defendant's motion to dismiss.  Accordingly, pursuant to Rule 3(B) of this Court's Individual Rules, we hereby request a pre-motion conference to authorize a motion for leave to file such a brief.

      Creative Commons is a global nonprofit organization that enables sharing and reuse of creative works through the provision of free legal tools.  In pursuit of that mission, Creative Commons makes available and maintains a suite of standard, "off-the-shelf" copyright licenses that are designed to signal and convey *ex ante* permissions for uses of works that copyright law would prohibit by default.  The motion to dismiss in this matter turns on the interpretation of one of these licenses.  Accepting the facts alleged as true, the plaintiff, Great Minds, published certain curricular material for schools under the terms of the Creative Commons Attribution – NonCommercial – Share Alike 4.0 International Public License (known as "CC BY-NC-SA 4.0"), which allows anyone to use, copy, and distribute the licensed material for "NonCommercial" purposes.  Great Minds' theory of the case is that the Defendant, FedEx Office, engages in conduct outside the scope of that license when, at the direction of a school district, FedEx Office makes copies of Great Minds' curricular material for use in the school district's classrooms.  While Great Minds concedes that the school district's use is "NonCommercial," it argues that FedEx Office's copying in the service of that use is not—so FedEx's conduct is unauthorized by the license and thus amounts to copyright infringement.

      As author and steward of the CC BY-NC-SA 4.0 license, Creative Commons is intimately familiar with the license and the manner in which it operates, is used, and is relied

upon by hundreds of millions of individuals, organizations, entities and governments. Creative Commons thus possesses a unique perspective on its proper interpretation and the consequences of an erroneous one. We seek to file an *amicus* brief explaining why Great Minds' interpretation of the CC BY-NC-SA 4.0 license is wrong.

"'District courts have broad discretion in deciding whether to accept *amicus* briefs.'" *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 14 F. Supp. 3d 99, 103 (E.D.N.Y. 2014) (citation omitted). "An *amicus* brief should normally be allowed when … the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Citizens Against Casino Gambling in Erie County v. Kempthorne*, 471 F. Supp. 2d 295, 311 (W.D.N.Y. 2007) (citation omitted).

The license at issue in this litigation applies not just to the set of educational materials that Great Minds has created, but to more than 150 million other works all over the world.[1] Great Minds' understanding of the "NonCommercial" limitation has the potential to impact the use and reuse of all other works licensed under the same terms, would thwart the purpose of the CC BY-NC-SA 4.0 license, contradict its plain language, and impede the public policy goals the license otherwise serves.

As is clear from its face, the overarching purpose of the CC BY-NC-SA 4.0 license is to allow for a broad range of reuses, so long as they are "not primarily intended for or directed towards commercial advantage or monetary compensation." *See* Dkt. 1-4 at 1. It does not further this purpose to require a party, such as a school district, that is engaged in a *bona fide* "NonCommercial" use (as that term is defined in the license) to refrain from using all others, including commercial entities acting solely at the licensee's direction, at every step in the reproduction or distribution process that culminates in sharing of the work for a NonCommercial end. Indeed, a CC BY-NC-SA 4.0 license would be of decidedly limited value if the licensor could invariably sue any for-profit intermediary engaged by the end user in the course of carrying out the ultimately permitted use. And the results would be absurd. Under the plaintiff's interpretation, school districts could not engage a parcel service to send copies of the licensed works to schools; could not use an internet service provider to host the works online for use in the classroom; or, more unworkable still, could not even email a digital file through a commercial network for receipt by students and educators (*cf. BMG Rights Mgmt. (US) LLC v. Cox Comm'ns, Inc.*, 149 F. Supp. 3d 634, 663-77 (E.D. Va. 2015)).

The point of Creative Commons licenses is to be *useful* tools that *facilitate* creative, socially constructive activity. Particularly (though not exclusively) where the licensee is an entity rather than an individual, the entity must be able to act *as entities do*, through employees and contractors alike. The artificial distinction drawn by Great Minds—between whether a school district employee pushes "copy" and pays FedEx Office for use of its copier, or a FedEx Office employee pushes "copy" on the same machine—would, if applied more broadly, preclude

---

[1] As of the end of 2015, creators had deployed Creative Commons licenses for more than 1.1 billion works. 14 percent are governed by the specific license at issue here; and 34 percent—or approximately 374 million works—are subject to a "NonCommercial" license of one variety or another. *See* https://stateof.creativecommons.org/2015/.

the use of most or all standard channels of dissemination and render the licenses all but useless. It would force users to choose between owning the entire chain of production or distribution, and leaving a trail of actionable copyright infringements in their wake. That is emphatically not how Creative Commons NonCommercial licenses were designed to work.

Nor is it consistent with what they say. As both parties recognize, it is black-letter law that, absent an indication to the contrary in the license, "what [a licensee] could itself do under the License, [a licensee] may use a contractor to do." *Hogan Sys., Inc. v. Cybersource Int'l, Inc.*, 158 F.3d 319, 324 (5th Cir. 1998); *see also Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 44-45 (1st Cir. 2010) ("When . . . there is no indication that a license-granting copyright owner has restricted the licensee's ability to use third parties in implementing the license, the license is generally construed to allow such delegation."). As we would explain more fully in our brief, there is simply nothing in the terms of the CC BY-NC-SA 4.0 license, properly understood, that counsels against such a common sense reading. In view of the operative legal principles, the structure of the license, and the plain language itself, the license on its face precludes the interpretation Great Minds asserts.

Finally, we note that Great Minds has argued that "granting FedEx's motion would create bad public policy." *See* Pl.'s Opp. to Mot. to Dismiss at 15. That is backwards. Creative Commons takes no view on whether, as a general matter, it is good or bad policy for creators to license works to the world-at-large under precisely the terms Great Minds seeks to enforce in this litigation—by using their own licenses, not ones from Creative Commons. But to twist the meaning of the CC BY-NC-SA 4.0 to engineer that result would be profoundly damaging. It would disrupt the settled expectations of innumerable users and creators of works governed by CC BY-NC-SA 4.0 licenses around the globe. And it would substantially diminish the utility of a license that enables the sharing of knowledge and creativity to build a more equitable, accessible, and innovative world.

For the foregoing reasons, we respectfully request a pre-motion conference, in order to obtain the court's permission to file a motion for leave to submit an *amicus* brief.

Sincerely,

Andrew Gass
of LATHAM & WATKINS LLP
*Admission pro hac vice pending*

cc: Diane Peters, General Counsel, Creative Commons Corporation
    All Counsel of Record via ECF