UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
GREAT MINDS,

                Plaintiff,                    **MEMORANDUM & ORDER**
                                                                              16-CV-1462 (DRH)(ARL)

    -against-

FEDEX OFFICE AND PRINT SERVICES,
INC.

                Defendant.
-------------------------------------------------------X

**APPEARANCES:**

**Law Office of Rhett O. Millsaps II**
Attorneys for Plaintiff
745 Fifth Avenue, Suite 500
New York, New York 10151
By:    Rhett O. Millsaps II, Esq.

**Baker & McKenzie LLP**
Attorneys for Defendant
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201
By:    Mark D. Taylor, Esq.
           Nicholas O. Kennedy, Esq.

**HURLEY, Senior District Judge:**

        Plaintiff Great Minds ("plaintiff" or "GM")  commenced this action against defendant FedEx Office and Print Services, Inc. ("defendant" or "FedEx") alleging violations of the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 *et seq*.  Presently before the Court is defendant's motion to dismiss the complaint and for an award of attorney's fees.  For the reasons set forth below, the motion to dismiss is granted and the motion for attorney's fees is denied.

## BACKGROUND

The following allegations are taken from the complaint ("Compl.") and documents attached thereto.

Plaintiff is a non-profit organization that produces various educational materials used by school districts across the county. Included in those materials is a comprehensive mathematics curriculum, *Eureka Math*, for grades PreK-12 ("Material" or "Licensed Material") for which GM owns the federal copyright. Plaintiff publishes and sells printed book versions of the Material and has entered into royalty bearing licenses with third parties for commercial reproduction of the Material. Compl. ¶¶ 8-11, 15.

Plaintiff also makes the Material available under a "Creative Commons Attribution - Non Commercial - Share Alike 4.0 International Public License (the "License")." Compl. ¶ 12 & Ex. B. As such, GM is the licensor. GM's "public licensing of its *Eureka Math* curriculum under this Creative Commons license advances [its] mission and benefits the public by allowing teachers, students, and school districts to freely share, reproduce, and use the Materials for their non-commercial, educational benefit." Compl. ¶ 12.

The License describes the licensed rights in relevant part as follows: "Licensor hereby grants You a worldwide, royalty-free, non-sublicensable, non-exclusive, irrevocable license to exercise the Licensed Rights in the Licensed Material to reproduce and Share the Licensed Material, in whole or in part, for NonCommercial purposes only." Compl. Ex. B, ¶ 2(a)(1)(A). "You" is defined as "the individual or entity exercising the Licensed Rights." Compl. Ex. B ¶ 1(n). The License further provides that as Licensor, plaintiff "waives any right to collect royalties from You for the exercise of the Licensed Rights, whether directly or through a collecting society

under any voluntary or waivable statutory or compulsory licensing scheme. In all other cases the Licensor expressly reserves any right to collect such royalties, including when the Licensed Material is used other than for NonCommercial purposes." *Id.* at ¶ 2(b)(3). The License defines NonCommercial as "not primarily intended for or directed towards commercial advantage or monetary compensation. For purposes of this Public License, the exchange of Licensed Materials for other material subject to Copyright or Similar Rights by digital file-sharing or similar means is NonCommercial provided there is no payment of monetary compensation in connection with the exchange." *Id*. ¶ 1(k). "You" is defined as "the individual or entity exercising the Licensed Rights under this Public License." *Id*. ¶ 1(l). The License requires that a licensee who shares the Material must, *inter alia*, "indicate the Licensed Material is licensed under this Public License, and include the text of, or the URI or hyperlink to, this Public License." *Id*. ¶ 3(a)(1)(C). With respect to "Downstream recipients," the License provides that "[e]very recipient of the Licensed Material automatically receives an offer from the Licensor to exercise the Licensed Rights under the terms and conditions of this Public License" and "[y]ou may not offer or impose any additional or different terms or conditions on, or apply any Effective Technological measures to, the Licensed Material if doing so restricts exercise of the Licensed Rights by any recipient of the Licensed Material." *Id*. at ¶ 3(a)(5)(A) & (C).

Sometime around October 2015 GM discovered that "at least one FedEx store in Michigan had reproduced the Material for profit - a commercial use - without authorization." In response to GM's demand that FedEx enter into a royalty-bearing license or cease reproduction of the Materials, FedEx asserted that "its duplication of the Materials for its own profit was lawful because FedEx was assisting school districts in their noncommercial use of the Materials"

and refused to comply with GM's demand. Compl. ¶¶ 16-18.

In February 2016, GM "discovered that at least one FedEx store in or around Suffolk County, New York also had reproduced the materials for profit without authorization or license . . . ." Compl. ¶ 19. In response to GM's renewed demand to cease commercial reproduction of the Materials or to enter into a license, FedEx again declined because "in FedEx's view, FedEx is merely acting as agent for school districts in assisting them with their lawful activities under the License." *Id.* ¶¶ 20, 21.

This action asserting a claim for copyright infringement followed.

## DISCUSSION

**A.     Standard of Review - Motion to Dismiss**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair

understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.' " *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

**B.    Copyright Infringement**

To state a claim for copyright infringement, a plaintiff must allege "(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991). A claim for copyright infringement will fail if the challenged use of the copyrighted work is authorized by a license. *See Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998). The existence of a license to engage in the challenged copying is an affirmative defense and the party claiming the benefit of the license has the burden of proving its existence. *Tasini v. New York Times Co., Inc.*, 206 F.3d 161, 170-71 (2d Cir. 2000). This is because "[a] copyright owner who grants a nonexclusive license to use

his copyrighted material waives his right to sue for copyright infringement." *Graham*, 144 F.3d at 236.

"Dismissal of a claim for copyright infringement is proper where a contract underlying the suit clearly and unambiguously demonstrates the existence of defendant's license to exploit the plaintiff's copyrights and where plaintiff has not shown any limitation on that license." *Ariel (UK) Limited v. Reuters Group PLC*, 2006 WL 3161467, at *5 (S.D.N.Y. Oct. 31, 2006).

"Principles of contract law are generally applicable in the construction of copyright . . . licenses and other transfers of rights." *Leutwyler v. Royal Hashemite Ct. of Jordan*, 184 F. Supp.2d 303, 306 (S.D.N.Y. 2001) (citing 3 Nimmer on Copyrights § 10.08); *accord Bartsch v. Metro-Goldwyn-Mayer, Inc.*, 391 F.2d 150, 153 (2d Cir. 1968).[1] "The threshold question in a dispute over the meaning of a contract is whether the contract terms are ambiguous." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000) (applying New York law). A contract is ambiguous if it is "capable of more that one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Selden Assocs. v. ANC Holdings*, 959 F.2d 425, 428 (2d Cir. 1992) (quotation marks omitted); *see also Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 197 (2d Cir. 2005) ("[A]mbiguity exists where a contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and . . . is

---

[1] The License does not specify what law governs and neither party has briefed the issue. However, plaintiff has cited New York contract construction principles (*see* DE 24 at p.2) without objection by defendant, and therefore "[u]nder the principle that implied consent to use a forum's law is sufficient to establish choice of law," *Tehran-Berkeley Civil and Environ. Engineers v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989), the Court will apply New York law.

cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business." (internal citation and quotation marks omitted)). It is unambiguous when it has "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Hunt Ltd. v. Lifschultz Fast Freight*, 889 F.2d 1274, 1277 (2d Cir. 1989) (internal quotation marks omitted). "Ambiguity is determined by looking within the four corners of the document, not to outside sources." *Powlus v. Chesley Direct LLC*, 2011 WL 135822 (S.D.N.Y. Jan. 10, 2011) (internal quotation marks omitted). The determination of whether a contract is in fact ambiguous is a question of law for the Court. *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004).

**C.     Summary of Arguments**

Defendants asserts that "[t]he Complaint rests upon the mistaken premise that the school district that Great Minds *explicitly licenses* to reproduce its materials for educational use may not enlist FedEx [] to make those reproductions on their behalf. . . . The law is clear that a licensee may enlist others to help it perform licensed activities. FedEx [] is doing just that. There is therefore no infringement . . . ." Def.'s Mem. at 1 (emphasis in original). Plaintiff's responds that FedEx's argument "overlook[s] that the License specifically limits it grant of rights to NonCommercial purposes only and specifically reserves any right to collect royalties when the Licensed Materials is used for other than NonCommercial purposes." Pl.'s Opp. Mem. at 7 (internal quotation marks omitted). According to plaintiff, "FedEx's delegation argument would be persuasive if it were reproducing the Materials at cost (*i.e.* without making a profit) as a pro bono service for the schools, and thus making a strictly noncommercial use of the Material - a

right that the school themselves are granted . . . ." FedEx exceeds the scope of the license when it "reproduces the Material for its own profit . . . since the schools themselves do not have the right under the License to make such a commercial use of the Material . . . ." *Id*. at 7-8.

**D.     The Motion to Dismiss is Granted.**

At issue on this motion to dismiss is whether the allegations that FedEx has copied the Materials at the behest of one or more school districts and charged the school districts for that copying at a rate more than FedEx's cost states a claim for violation of GM's copyright. There is no claim that the undisclosed school districts are using the Materials for other than a "non-Commercial purpose" or that FedEx has copied the Materials for any other entities or for its own purposes. As so framed, FedEx's copying of the Materials is permitted by unambiguous terms of the License and the motion to dismiss is granted.

"A licensee to make and use is not (in the absence of specific language in his license) limited to making with his own hands, in his own shop, or by his own employes[2]. He may employ, procure, or contract with as many persons as he chooses to supply him with that which he may lawfully use, provided such conduct does not change his relation to the licensor." *Marconi Wireless Telegraph Co. of Am. v. Simon*, 227 F. 906, 910 (S.D.N.Y. 1915),[3] *aff'd*, 231 F. 1021 (2d Cir. 1916) ("The decree of the District Court is affirmed, on the opinion of Judge Hough. 27 Fed. 906."), *rev'd on other grounds*, 246 U.S. 46 (1918). *Accord Estate of Hevia v.*

---

[2] For clarity, the Court notes that "employes" is an alternative spelling of employees.

[3] Citing *Foster Hose Supporter Co. v. Taylor Co.*, 191 Fed. 1003, 1004 (2d Cir.1913) (upholding dismissal of patent infringement claim as the defendant corporation was employed by licensee to manufacture and sell the patented items as its agent and "the license did not prevent[] [the licensee] from having this done for him by other persons.")

*Portico Corp.*, 602 F.3d 34, 44-45 (1st Cir. 2010) ("When there is no indication that a license-granting copyright owner has restricted the license's ability to use third parties in implementing the license, the license is generally construed to allow such delegation."); *Automation by Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 757 (7th Cir. 2006) (once licensee "secures the rights to duplicate the [copyrighted] designs . . . it could hire another party . . . if [the Licensee] lacked the tools or skills to do so itself"); Raymond T. Nimmer and Jeff C. Dodd, Modern Licensing Law § 6.21 (Dec. 2016 Update); *cf. Womack+Hampton Architects, LLC v. Metric Holdings Ltd. P'ship*, 102 Fed. App'x 374, 382-83 (5th Cit. 2004) (licensee's hiring of others not a transfer of the rights contained in the copyright license as the use at issue was consistent with the license and not an impermissible transfer).

Here, the License does not limit a licensee's ability to use third parties in exercising the rights granted by the License. GM concedes as much when it conceded that it would be permissible for Fed Ex to copy the materials if it did so at cost. Further, the License defines "Share" as "to provide material to the public by any means or process . . . such as reproduction . . . ." Compl. Ex. B ¶ 1(1). As defendant points out, the language " 'any means or process' indicates an intent to allow licensees broad latitude in exercising their licensed right to reproduce the [M]aterials for non-commercial use." Def.'s Mem. at 7.

GM's reliance on the language of the License which grants the right to reproduce and share the Material "for NonCommercial Purposes" does not save its case. As noted earlier, the License states that "You," defined as "the individual or entity exercising the Licensed Rights" under the License may "reproduce and Share the Licensed Material, in whole or in part, for NonCommercial purposes only." Compl. Ex. B ¶¶ 1(n), 2(a)(1)(A). Under the present scenario,

the entities exercising the "Licensed Rights" are the school districts, not FedEx, as there is no claim that the school districts are reproducing or sharing the materials for other than a "nonCommercial Purpose." As the school districts are the entities exercising the rights granted by the License, it is irrelevant that FedEx may have benefitted by having been hired by them to act, viz. make copies, in their stead. *See Raybestos*, 463 F.3d at 757.[4]

Nor can the reservation of rights contained in the License be read to preclude a licensee from hiring someone to make copies of the Materials so the licensee can use them for a "nonCommerical" purpose. The applicable provision states in relevant part: "To the extent possible, Licensor waives any right to collect royalties from You for the exercise of the Licensed Rights . . . . In all other cases the Licensor expressly reserves any right to collect such royalties, including when the Licensed Material is used other than for NonCommerical Purposes." Rather, the unambiguous import of this provision is to reserve GM's right to collect royalties from a licensee if the *licensee* exceeds the scope of the license by, for example, selling copies of the Materials.

The fair use cases relied upon by GM, *Princeton Univ. Press v. Mich. Document Serv.*, 99 F.3d 1381 (6th Cir. 1996,) and *Basic Books v. Kinko's Graphics Corp.*, 758 F. Supp. 1522 (S.D.N.Y. 1991), are distinguishable in that the customers "requesting" the copying did not have a license to make the reproduction and because FedEx does not rely upon the fair use doctrine.

---

[4] The Court notes parenthetically that prohibiting a school district from using a commercial copy service to duplicate the materials would be antithetical to GM's avowed purpose in subjecting the Materials to the License, to wit, to "benefit[] the public by allowing teachers, students, and school districts to freely share, reproduce, and use the Materials for their non-commercial, educational benefit." Compl. ¶ 12.

*Cohen v. United States*, 98 Fed. Cl. 156, 165 (Fed. Cl. 2011), also relied on by Plaintiff, is similarly not relevant. In construing a license that granted "the exclusive right to publish and market [the copyrighted material] in paper, diskette, and CD-ROM," the Court found that the copyright holder retained the rights to reproduce, display and distribute the material on the Internet relying on the proposition that "[i]n construing the terms of a license [a] court must give precedence to narrow, specific language over broad, general language." *Id*. Here, the unambiguous terms of the License grant the licensee, i.e., the person exercising the rights provided under the License, the right "to reproduce and Share the Licensed Material, in whole or in part, for NonCommercial purposes only" but does not in any manner limit the means by which a licensee may reproduce the materials.

In sum, the unambiguous terms of License permit FedEx to copy the Materials on behalf of a school district exercising rights under the License and charge that district for that copying at a rate more than FedEx's cost, in the absence of any claim that the school district is using the Materials for other than a "non-Commercial purpose." The motion to dismiss is granted.

E.    **The Motion for Attorney's Fees is Denied.**

A "court in its discretion may . . . allow the recovery of full cost [and] also award a reasonable attorney's fee to the prevailing party" in a civil action for copyright infringement." 17 U.S.C. 505. "When determining whether to award attorneys fees, district courts may consider such factors as (1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." *Bryant v. Media Right Productions, Inc*., 603 F.3d 135, 144 (2d Cir. 2010). "The third factor—objective unreasonableness—should be given substantial weight."

*Id*.

Consideration of these factors warrant denial of FedEx's request for attorney's fees. First, plaintiff's claim was not frivolous and there is no claim that GM was motivated by bad faith. Moreover, GM's claim, while unsuccessful, was not objectively unreasonable. Furthermore, it would appear that no court has addressed whether commercial copy services may reproduce materials for a licensee under the Creative Commons License. *See* Pl.'s Mem. at 17.

The motion for costs and attorney's fees is denied.

## CONCLUSION

Defendant's motion to dismiss is granted and its request for costs and attorney's fees is denied.[5]

Dated: Central Islip, New York
February 24, 2017

    /s/   Denis R. Hurley
Denis R. Hurley
United States District Judge

---

[5] In its opposition papers, GM requests that in the event the motion to dismiss is granted it be granted leave to amend. It does not, however, specify how it would amend that complaint. To the extent that GM believes it can amend the Complaint to state a cause of action, it may move to file an amended complaint within twenty (20) days of the date of this Order.